Armen Kiramijyan (State Bar No. 276723)
Email: consumerlitigationteam@kaass.com

**KAASS LAW**
313 East Broadway, #944
Glendale, California 91209
Telephone: 310.943.1171

Attorney for Plaintiff
VAAGN VARTANIAN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAAGN VARTANIAN, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, A Delaware Limited Liability Company,<br><br>  Defendant. | Case No.: 2:12-cv-08358-ODW-(AJWx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: March 11, 2013<br>Judge: Hon. Otis D. Wright II<br>Time: 1:30 p.m.<br>Place: Courtroom 11 |

NOW COMES Plaintiff VAAGN VARTANIAN ("Plaintiff"), by and through counsel, and respectfully submits his Memorandum of Points and Authorities in Opposition to Defendant PORTFOLIO RECOVERY ASSOCIATES, LLC's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint filed (FAC) under Fed. R. Civ. P. 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The legislature passed the Fair Debt Collection Practices Act in order to "protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether valid debt actually exists." *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

Unscrupulous activities by debt collectors remain a significant problem in the United States. In the Federal Trade Commission's Annual Report for 2006, the FTC reported a 500%

surge of claims against debt collectors for abusive practices between the years 2000 and 2006. Federal Trade Commission, *Annual Report 2006: Fair Debt Collection Practices Act* 2 (2006)

Congress enacted the Fair Credit Reporting Practices Act to protect consumers from negligent credit reporting practices and the inaccurate credit reports that result therefrom. *See Guimond v. Trans Union Credit Information, Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *see also Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985). "The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them." *Guimond*, 45 F.3d at 1333.

Credit reporting agencies, furnishers of credit information, and other related parties rest comfortably on the advantaged side of a power imbalance with consumers, many of whom lack the resources or knowledge to challenge inaccurate credit information or understand their rights under the FCRA and other relevant state and federal statutes. Identity theft, negligent account reporting, and simple miscommunication can result in creditors reporting inaccurate credit accounts for years before reporting errors are resolved.

Pleadings from a consumer in this position should be analyzed with an eye toward recognizing the efficacy of the Plaintiff's claims, particularly when those claims exceed the minimum threshold standard espoused in a long history of favorable case law.

## II. STATEMENT OF FACTS

This action arises out of Defendant's willful and negligent violations of Federal and State consumer protection laws, involving unfair collection and credit reporting. As stated in Plaintiff's FAC, Defendant has breached its duty to employ reasonable procedures to ensure the accuracy of credit information under both the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), and the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a), by attributing an inaccurate account to Plaintiff and by failing to comply with its reinvestigation duties.

Plaintiff further alleges that Defendant has committed violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692f, 1692g ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17 ("RFDCPA") for Defendant's

failure to comply with statutory notice, disclosure, and validation requirements, for reporting debt information Defendant knew or should have known to be false, and for failing to cease collection efforts upon notice of Plaintiff's dispute.

In March of 2012, Plaintiff discovered a collection account reported by Defendant (the "account") on credit reports he received from the three major credit reporting agencies (the "CRAs"). Upon careful review, Plaintiff noticed that the collection account reported by Defendant was the same Wells Fargo account that Wells Fargo Bank deleted after Plaintiff's dispute. Since Plaintiff did not apply for or open or had any responsibility or liability for the account reported by Wells Fargo, Plaintiff, based on the information available to him, determined that the account reported by Defendant did not belong to him and believed it to be inaccurate.

Consequently, Plaintiff contacted the CRAs inquiring about the account. Specifically, Plaintiff disputed the existence, ownership, and accuracy of the account. Plaintiff, thereafter, contacted Defendant to request that Defendant reinvestigate the authenticity and accuracy of the account. Defendant did not provide documentation, such as an original contract, or any information to substantiate the existence, ownership, and accuracy of the account.

After several additional requests for information and confirmatory documentation, and the repeated inability or unwillingness by the Defendant to provide such information and documentation, Plaintiff filed a suit against Defendant on September 27, 2012. Plaintiff subsequently filed his FAC on January 16, 2013.

### III. STANDARD OF LAW

Under Fed. R. Civ. P. 12(b)(6), a court must accept all allegations of material fact as true and construe the complaint in light most favorable to the party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 173 L. Ed. 2d 868, 129 S. Ct. 1937, 1949 (2009).

To sufficiently state a cause of action, "a complaint generally must satisfy only the

minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones,* 319 F. 3d 483, 494 (9th Cir. 2003). The pleading requirements under rule 8(a)(2) are generally held to be satisfied by "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and which is sufficient to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 167 L. Ed. 2d 929, 127 S. Ct. 1955, 1964 (2007)(quoting *Conley v Gibson*, 355 U.S. at 47).

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.* 108 F.3d 246, 249 (9th Cir. 1997)(quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)). This general tendency is properly contravened only in "extraordinary" cases. *See United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Nor does Rule 12(b)(6) permit the dismissal of a plaintiff's factual assertions based on a judge's disbelief of those assertions. *See Neitzke v. Williams*, 490 U.S. 319, 327, 104 L.Ed.2d 338, 109 S. Ct. 1827, 1832 (1989).

Even though "it may appear on the face of the pleadings that a recovery is very remote and unlikely," *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the test the Court should apply in consideration of a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Twombly,* 550 U.S. at 583.

### IV. ARGUMENT

**A. Plaintiff Has Plead Sufficient Facts To State A Claim Under §1681-2(b) of FCRA**

Defendant asserts that Plaintiff's FCRA claims fail because he has not alleged 1) that the CRAs determined his dispute to be non-frivolous, 2) nor any facts to support his claim that Defendant's investigation of any dispute it received from CRAs was unreasonable. *Def's Mot. to Dism. FAC 6:9-12*.

**1. Defendant's Duties Under §1681s-2(b) Were Triggered**

Defendant asserts that Plaintiff does not allege that the CRAs determined his dispute of the account was not "frivolous or irrelevant," or what information he provided to CRAs. *Def's*

*Mot. to Dism. FAC 9:11-13, 24-26.* Defendant further asserts that Plaintiff does not allege that he provided the CRAs or Defendant with any evidence of fraud, error or any documents and information he received from Wells Fargo, nor does he allege that CRAs communicated to him that they had in fact communicated his dispute to Defendant. *Def's Mot. to Dism. FAC 10:1-5.*

As an initial matter, there is no obligation under FCRA for a consumer to provide CRAs or furnishers with "evidence of fraud, error or any documents and information" in order to successfully submit a dispute to CRAs or to bring a claim against furnishers for violations of the FCRA. Defendant does not cite any controlling authority which supports the proposition that "evidence of fraud, error or any documents and information" is required for Plaintiff to dispute the accuracy of the account to CRAs.

FCRA provides consumers, such as Plaintiff, the right to dispute any information contained in their credit reports which they believe to be inaccurate or incomplete. "[A]n item on a credit report can be 'incomplete or inaccurate' within the meaning of the FCRA's furnisher investigation provision, 15 U.S.C. § 1681s-2(b)(1)(D), 'because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163). *See also Drew v. Equifax Info. Servs. LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (finding that whether or not reporting an account belonging to someone was inaccurate is a triable issue of material fact, despite the fact that the account is labeled as "lost or stolen").

Secondly, as stated in the FAC and as cited by Defendant in its own Motion, Plaintiff's disputes submitted to CRAs as well as his letters sent to Defendant all questioned the existence, ownership, and accuracy of the account and debt with Defendant. Specifically, Plaintiff stated that he did not apply for or open the account, that the account did not belong to him, and requested proof of his ownership of the account, his responsibility for the debt, and Defendant's right to collect the debt. FAC ¶ 17, 19, 52. *Def's Mot. to Dism. FAC 3:12-14, 19-21*. There simply are no further facts to allege in that respect. Defendant again does not explain why it is insufficient for Plaintiff to challenge the accuracy of the account in its entirety; nor does Defendant cite any controlling authority which supports the proposition that Plaintiff

cannot bring a dispute under FCRA concerning the ownership of the account. *Petrosyan v. CACH, LLC, et al.*, Case No. 12-cv-08683-GW. ("defendants do not provide the Court with any controlling authority which stands for the proposition that a dispute regarding whether an account even belongs to the concerned individual cannot qualify as the necessary 'dispute' for purposes of FCRA or CCRAA liability.") Cf. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163). *See also Drew v. Equifax Info. Servs. LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012)

Thirdly, Plaintiff stated plainly that "based on information and belief," the CRAs contacted Defendant as part of the process required under § 1681s-2(b). FAC ¶18. This is customarily the greatest degree of certainty any consumer can have that his dispute has been forwarded to the furnishers. No consumer has access to the internal records of the CRAs.

Plaintiff is not a privy to the means of communication between CRAs and furnishers of credit information. The communications and verification process that goes on between the CRAs and the furnishers is a closed loop which leaves Plaintiff without information as to what took place when Defendant allegedly verified the accuracy of the account.

In *Arutyunyan v. Bank of America,* Case No. 11-cv-08873-GW, the Court has agreed that "it is unreasonable to expect much in the way of factual pleading concerning Defendant's receipt of notification from the credit reporting agency or agencies, which is what is necessary to trigger liability pursuant to section 1681s-2(b)." Plaintiff "should be able to make that allegation on information and belief…." *Id*.

Furthermore, in *Sargisian v. Bank of America, N.A.*, Case No. 11-cv-08758-PA, the Court agreed with the plaintiff in noting that:

> "[p]laintiff, as a consumer, does not and cannot know the internal
> procedures conducted in case of disputes and how exactly Defendant
> was contacted by the CRAs concerning his dispute. However,
> because Plaintiff did initiate credit bureau disputes concerning
> Defendant's reporting with the CRAs and the accounts continued to

report as if they had been verified by the furnisher, it can be reasonably assumed that Defendant was contacted by CRAs about Plaintiff's dispute, unless Defendant claims fraud against CRAs over their alleged investigation and verification of the accounts conducted with Defendant."

Here, Defendant does not argue that CRAs did not contact Defendant to notify of Plaintiff's dispute. Rather, Defendant argues that the FAC does not give enough detail as to this contact. Plaintiff, however, can hardly be expected to provide further facts in that respect.

Nonetheless, in response to Plaintiff's disputes, Defendant continued reporting the disputed account on Plaintiff's credit reports thereafter. CRAs do not typically forward disputes to furnishers when they believe a consumer's claims to be frivolous. As such, a strong inference can be drawn that CRAs determined Plaintiff's dispute not to be "frivolous or irrelevant."

Consumers are often not alerted to the fact that CRAs have contacted furnishers of credit information on their behalf in order to determine the validity of a dispute. They are, however, alerted when CRAs find their disputes to be "frivolous or irrelevant." Pursuant to 15 U.S.C. § 1681i(a)(3)(B), upon making determination that a dispute is frivolous or irrelevant, CRAs "shall notify the consumer of such determination not later than 5 business days after making such determination…." Plaintiff never received such notification from any of the CRAs in response to his disputes.

Case law supports the proposition that the CRAs are not under the obligation to "provide a legal opinion on the merits" of a consumer's claim. *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Rather, this role is properly assigned to the courts. *Id.*

The assertion that the CRAs forwarded Plaintiff's dispute to Defendant is indication that the CRAs did not consider the dispute to be frivolous. Again, notably, Defendant does not claim that it never received notice of Plaintiff's dispute from CRAs, suggesting again that the CRAs did not consider the dispute to be frivolous.

**2. Defendant Breached Its Duty to Conduct Reasonable Investigation**

Defendant further asserts that Plaintiff has not pled any facts to support his claim that Defendant failed to reasonably investigate any non-frivolous dispute it received from CRAs. *Def's Mot. to Dism. FAC 9:12-15.10:9-11.*

Both district and circuit courts, including the Ninth Circuit, have consistently recognized that "the plain meaning of the term 'investigation' is a 'detailed inquiry or systematic examination,' which necessarily 'requires some degree of careful inquiry.'" *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1155 (9th Cir. 2009) (citing *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426, 429-31 (4th Cir. 2004)). See also *Agosta v. Inovision, Inc.*, 2003 WL 22999213, at 5 (E.D. Pa. Dec. 16, 2003); *Buxton v. Equifax Credit Info. Servs., Inc.*, 2003 WL 22844245, at 2 (N.D. Ill. Dec. 1, 2003); *Wade v. Equifax*, 2003 WL 22089694, at 2-3 (N.D. Ill. Sept. 8, 2003); *Betts v. Equifax Credit Info. Servs., Inc.*, 245 F.Supp. 2d 1130, 1135 (W.D. Wash. 2003); *Olwell v. Med. Info. Bureau*, 2003 WL 79035, at 5 (D. Minn. Jan. 7, 2003); *Kronstedt v. Equifax*, 2001 WL 34124783, at 16 (W.D. Wis. Dec. 14, 2001); *Bruce v. First U.S.A. Bank*, 103 F. Supp.2d 1135, 1143 (E.D. Mo. 2000).

FCRA § 1681s-2(b)(1)(A) uses the term "investigation" in the context of articulating a furnisher's duties in the consumer dispute process. "It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute- and, ultimately, correct-inaccurate information on their credit reports, Congress used the term "investigation" to include superficial, *un* reasonable inquiries." *Johnson*, 357 F.3d at 430-31. *See also Gorman*, 584 F.3d at 1155. (stating that "'superficial and unreasonable inquir[y]' would hardly satisfy Congress' objective").

The primary purpose of the FCRA is "to protect consumers against inaccurate and incomplete credit reporting." *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir.2002). If FCRA "required only a cursory investigation [it] would not provide such protection; instead, it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions…." *Gorman*, 584 F.3d at 1156. As such, furnishers of credit information are required to conduct "at least a reasonable, non-cursory investigation [that]

8
**OPPOSITION TO MOTION TO DISMISS**

comports with the aim of the statute to 'protect consumers from the transmission of inaccurate information about them.'" *Id*. at 1157 (quoting *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985).

The statutory mandated reinvestigation requires substantially more than a mere comparison of records and transmission of word "verified" without any evidentiary support. Nowhere in its twenty three (23) page Motion to Dismiss does Defendant mention conducting reasonable investigation required by FCRA, nor does it provide a scintilla of evidence to conclude the same.

A reasonable investigation should have resulted in either Defendant proving the accuracy of the disputed account or deleting it from reporting to CRAs. Defendant, in this instance, has failed to either disprove Plaintiff's claims and provide, upon request, information and documents substantiating any verifications made, or, alternatively, proceed with deletion of the disputed information. As such, it is presumed that Defendant failed to conduct reasonable investigation.

"[I]f defendants refuse – as they have here – to give a consumer any insight into the nature of their investigation, the consumer can hardly be expected to provide further facts regarding the nature of the investigation(s) so as to sufficiently allege their unreasonable nature(s)." *Petrosyan v. CACH, LLC, et al*., Case No. 12-cv-08683-GW.

Plaintiff is not privy to the measures and means by which furnishers of information evaluate information and conduct their investigation. Furnishers' failure and refusal to communicate results of investigation to consumers, however, especially after multiple requests, can only be construed that reasonable investigation was not conducted, or worse, that no proof of verification exists to support their continued reporting of the disputed information to CRAs.

To summarily conclude that the disputed account is accurate because Defendant claims it to be so, without more, cannot be grounds for compliance with FCRA. This is particularly true in light of the legislative purpose behind this statute.

**3. Defendant As a Furnisher Is Obligated To Substantiate Its Indirect**

**Communication to Consumers**

Defendant asserts that Defendant had no duty under §1681s-2(b) to respond to Plaintiff's direct disputes. *Def's Mot. to Dism. FAC 11:13-14.* Defendant further asserts that Plaintiff's allegations that Defendant failed to provide him with verification of the account arise under section 1681s-2(a) of the FCRA and Plaintiff does not have standing to pursue a claim under that section. *Def's Mot. to Dism. FAC 11:24-26, 12:1.*

Contrary to Defendant's assertions, Plaintiff's FCRA claims are plainly § 1681s-2(b) claims, for which there is a private right of action. Plaintiff's letters addressed to Defendant were not requests for his own individual investigation. Rather, Plaintiff requested a statutorily mandated investigation and proof that Defendant in fact conducted such reasonable investigation, with which Defendant failed to comply.

"While a plaintiff may not sue a furnisher for failing to communicate with him directly, by failing to communicate the furnisher cannot be heard to complain when a plaintiff cannot provide further facts or specifics about why any investigation of a credit dispute was unreasonable. In the absence of such communication, consumers are left entirely in the dark about what, if anything, any furnisher did to verify the accuracy of its earlier report. A Rule 12(b)(6) motion will not act as the final seal on that entombment." *Petrosyan v. CACH, LLC, et al.*, Case No. 12-cv-08683-GW.

Defendant's duties were triggered upon Plaintiff's sending of dispute letters to CRAs. However, the communications and verification process that goes on between the CRAs and the furnishers is a closed loop which leaves Plaintiff without information as to what took place when Defendant allegedly verified the accuracy of the account.

While under FCRA, a furnisher's duty to respond to a consumer dispute is triggered only upon communication of such dispute through CRAs, FCRA does not promote for furnishers to neglect disputes received directly from consumers. There is a clear legislative intent behind FCRA to compel furnishers to remain in active contact with consumers.

FCRA, which permits consumers to communicate to furnishers of their disputes, could not possibly support furnisher's dismissal and disregard of those very same disputes and

10
OPPOSITION TO MOTION TO DISMISS

concerns. It cannot be the intent of the legislature to at once permit consumers the right to contact furnishers and the furnishers the right to ignore that contact. This is especially true because CRAs do not provide documentation or any detail whatsoever as to any investigation conducted; rather, CRAs direct consumers to contact furnishers directly for further information and documents.

Defendant elected not to provide concrete evidence that the account in question was in fact investigated and is in fact an accurate account. Essentially, Defendant is saying that an internal investigation which keeps consumers largely ignorant of the nature of that investigation suffices under FCRA. However, as established above, simply looking at records but failing to communicate those results, without more, cannot be the basis for complying with the statutory requirements of FCRA.

"A provision that require[s] only a cursory investigation [into Plaintiff's dispute] would not provide…protection; instead it would allow furnishers to escape their obligations by merely rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry." *Gorman,* 584 F.3d at 1156.

**B. Plaintiff Has Standing To Pursue A §1785.25(a) Claim Against Defendant**

**1. Plaintiff Has a Private Right of Action Against Defendant Under CCRAA §1785.25(a)**

Defendant asserts that Plaintiff lacks standing to pursue a claim under §1785.25(a) of CCRAA against furnishers of information. *Def's Mot. to Dism. FAC 12:3-4. Def's Mot. to Dism. FAC 12:13-15.* In support of this statement Defendant heavily relies upon *Pulver v. Avco Financial Services* and cases that have observed *Pulver* favorably. *Def's Mot. to Dism. FAC 12:14-18, 13:1-5.*

The problem with citing *Pulver* and its progeny is that *Pulver* was decided in 1986, seven years *prior* to the 1993 amendment of the CCRAA. The 1993 amendment reaffirmed a private cause of action under § 1785.25(a), a judicial principal that has been echoed even in cases that refuse to find a private cause of action for other subsections of § 1785.25. *See e.g., Carvalho v Equifax*, 629 F.3d 876, 888 (9th Cir. 2010). Since its 1993 amendment, CCRAA

certainly applies to furnishers of credit information, of which Defendant clearly qualifies. *Gorman*, 584 F.3d at 1171.

California appellate courts have also permitted a private action against furnishers of credit information. *See Sanai v. Saltz*, 170 Cal. App. 4th 746, 770, 88 Cal. Rptr. 3d 673, 692 (Cal. Ct. App. 2009); *Hussey-Head v. World Sav. & Loan Ass'n*, 111 Cal. App. 4th 773, 779, 4 Cal. Rptr. 3d 171, 176 (Cal. Ct. App. 2003). The Court in *Arutyunyan v. American Express Centurion Bank, et al.*, following the California appellate court decisions in *Sanai* and *Hussey-Head,* recently held that "a private right of action against furnishers of credit information is available under CCRAA § 1785.25(a)." *Arutyunyan v. American Express Centurion Bank, et al.*, Case No. 12-cv-04123-CBM.

Furthermore, FCRA expressly preserves § 1785.25(a) from preemption, allowing its enforcement against furnishers. 15 U.S.C. § 1681t(b)(F)(i). Defendant, however, failed to cite or identify any provision of California law authorizing enforcement of § 1785.25(a) by state officials. Thus, accepting Defendant's argument that private plaintiffs cannot bring CCRAA claims against furnishers would lead to the absurd conclusion that "Congress explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism. This would be an unlikely result at best." *Gorman*, 584 F.3d at 1170.

To settle this issue, the Court in *Gorman* held that because the "purpose of the express exclusion was precisely to permit *private enforcement* of these provisions, […] the *private right of action* to enforce California Civil Code § 1785.25(a) is not preempted by the FCRA." *Id*. at 1173 (Emphasis added). *See Carvalho v. Equifax Information Services*, LLC 629 F.3d 876 (9th Cir. 2010).

The addition of Cal. Civ. Code § 1785.25 obviously expended the definition of "person" by implication to include furnishers of information– "person shall not furnish information…" § 1785.25(a), "person who regularly furnishes information…" (d), "person who furnishes information…" (g). Therefore, § 1785.31 not only provides consumers with a private right of action under CCRAA, but also extends liability to furnishers of information.

As such, Plaintiff is entitled to bring a claim against Defendant as a furnisher under CCRAA, Cal. Civ. Code § 1785.25(a).

### 2. Plaintiff Has Plead Sufficient Facts To State A Cause of Action Under CCRAA

Defendant asserts that Plaintiff has not alleged sufficient facts to state a cause of action. (*Def's Mot. to Dism. FAC 13:8-9*) and has not pled any facts to show how Defendant could or should have known that any information furnished to CRAs was inaccurate. *Def's Mot. to Dism. FAC 13:25-26.* Defendant further adds that Plaintiff does not claim that he provided any documentation from Wells Fargo, which is attached to the FAC as exhibit C, to Defendant. *Def's Mot. to Dism.FAC 14:1-3.*

CCRAA § 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

> "To state a claim pursuant to CCRAA § 1785.25(a), the plaintiff must allege that the furnisher of information knew or should have known that certain information was incorrect but reported the information anyway. *See Sanai v. Saltz*, 88 Cal. Rptr. 3d 673, 692 (Cal. Ct. App. 2009) (reversing dismissal and holding allegations that the furnisher of information knew that the information was incorrect but nonetheless reported it "are sufficient to state a cause of action under section 1785.25, subdivision (a).")) Plaintiff alleges that she sent letters to Defendants on several occasions, including on December 15, 2010, "request[ing] documentation substantiating the existence, ownership and accuracy of each accounts reported by each of [Defendants] . . .." […] Defendants did not respond to Plaintiff. […] Plaintiff further alleges that Defendants continued to report the "negative status" accounts as of the filing date of her FAC, after the commencement of litigation. […] The Court finds that this is sufficient to state a claim under CCRAA § 1785.25."

*Arutyunyan v. American Express Centurion Bank, et al.*, Case No. 12-cv-04123-CBM.

Here, just like in *Arutyunyan*, Plaintiff submitted multiple letters to Defendant disputing the existence, ownership, and accuracy of the account. Defendant did not respond to Plaintiff and continued to report the "negative status" account on Plaintiff's credit reports. Defendant's failure to substantiate the accuracy of its reporting, after such excessive notices, permit the

inference that Defendant could not produce evidence to prove the accuracy of its reporting. This establishes Defendant knew or should have known that its reporting is inaccurate.

Plaintiff did not have to provide the letter he received from Wells Fargo to Defendant for it to refrain from reporting information Defendant knew or should have known was inaccurate in light of Plaintiff's numerous disputes. CCRAA, just like the FCRA, does not impose an obligation upon consumers to provide documents to furnishers for them to comply with their statutory obligations to report accurately. Nor does such requirement exist for consumers to succeed on CCRAA claims.

**C. Plaintiff Has Plead Sufficient Facts To State A Claim Under FDCPA and RFDCPA**

**1. Defendant Was Attempting to Collect a Debt Within the Meaning of FDCPA and RFDCPA**

Defendant asserts that Plaintiff does not allege that Defendant was attempting to collect a "debt" within the meaning of the FDCPA, or a "consumer debt" within the meaning of the RFDCPA. *Def's Mot. to Dism. FAC 14:23-24, 15:1*. Defendant further asserts that FDCPA and RFDCPA only apply to financial obligations that were incurred "primarily for personal, family or household purposes" and that Plaintiff does not allege that the unpaid balance on the account was incurred such purposes. *Def's Mot. to Dism. FAC, 15:5-9*. Defendant concludes that Plaintiff "cannot in good faith allege that the account is a 'debt' under either statute because he claims that the account does not belong to him. *Def's Mot. to Dism. FAC 15:17-18*.

As an initial matter, Courts have found and the Federal Trade Commission (FTC) has expressed an opinion that credit reporting constitutes communication and is in fact a collection activity. *Boatley v. Diem Corp.*, 2004 WL 5315892 (D. Ariz. 2004) (finding that reporting on Plaintiff's credit report is a collection tactic).

Reporting a debt to a credit reporting agency is "a powerful tool designed, in part, to wrench compliance with payment terms…." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993). "[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay just like dunning letters and telephone calls." John F. LeFevre, *Federal*

*Trade Commission*, Letter (December 23, 1997), http://www.ftc.gov/os/statutes/fdcpa/letters/cass.htm.

As alleged in Plaintiff's FAC, Defendant reported a debt account on Plaintiff's credit reports to collect upon that debt. FAC ¶ 52. Logically, there is no other purpose for doing so.

Secondly, Plaintiff pleaded in his FAC that Defendant is "engaged in the business of collecting consumer debt, as defined by 15 U.S.C. § 1692a(5)." FAC ¶8. Moreover, Defendant reported the subject debt in Plaintiff's personal *consumer* credit report, not to a business credit report, by which Defendant concedes it was collecting a "debt" or "consumer debt" within the meaning of the FDCPA and RFDCPA.

Because Plaintiff disputes the debt account in its entirety, it is unreasonable for Defendant to ask Plaintiff to prove in his FAC that the debt is for "personal, family, or household purposes" under the "debt" definition of FDCPA and "consumer debt" definition of RFDCPA. In Plaintiff's instance, the debt was not for any "purpose" per se, and it would be difficult, if not impossible to prove the purpose behind a debt that may or may not even exist in fact. To compel another result runs contrary to the legislative intent behind the FDCPA and RFDCPA to protect consumers from unfair debt collection practices.

**D. Plaintiff Alleged Facts Sufficient to State a Claim Under FDCPA and RFDCPA**

Defendant asserts that Plaintiff has failed to set forth facts that might satisfy the elements of FDCPA and RFDCPA claims. *Def's Mot. to Dism. FAC 16:9-11*.

**1.** Defendant asserts that Plaintiff's "claim under section 1692g(a) fails because he has not alleged that [Defendant] ever communicated with him." *Def's Mot. to Dism. FAC 18:1-2*. Defendant further asserts that Plaintiff asserts that Defendant failed to communicate with him. *Def's Mot. to Dism. FAC 18:16-17*.

"The term 'communication' is a very broad definition in the act. It means 'the conveying of information regarding a debt *directly or indirectly* to any person through any medium.' 15 U.S.C. 1692a(2)." *Sullivan v. Equifax*, 2002 WL 799856 at 4 (E.D. Pa. 2002) (emphasis added).

Just because Defendant did not contact Plaintiff directly, does not mean that Defendant

was not trying to collect upon a debt. By reporting collection account on Plaintiff's credit reports, Defendant sought to collect upon the reported debt.  There is no other purpose behind Defendant's reporting than to coerce Plaintiff to make payments on the alleged debt.

Following Defendant's logic means that debt collectors can purposely choose not to communicate with consumers directly, therefore, never triggering their obligations under FDCPA. Instead, debt collectors will compel consumers to pay debts by reporting collection accounts in consumer credit reports and damaging their credit, without ever having to validate the debts.  As a result, consumers will be less likely to become aware of collection accounts, particularly when debt collectors suspect, or have reason to suspect, that the accounts are ripe for dispute (e.g. when the collectors lack the necessary "bill of sale" or documentary evidence supporting the right to collect upon a debt).

Debt collectors will be able to avoid liability for FDCPA violations simply by never initiating contact with debtors, thereby allowing charges and interest to accrue on accounts that consumers might not be aware of.

This would place the burden of confirming the validity of debt upon the consumers, not the debt collectors.  This is clearly an absurd interpretation that is in direct conflict with the purpose of the FDCPA and is against public policy.

As stated above, if we follow Defendant's reasoning, we arrive at the absurd conclusion that a third party debt collector can choose not to communicate directly to a consumer regarding collection of a debt, have unconditional right to report collection accounts to CRAs, and refuse to validate such debt upon dispute. This would clearly deprive consumers of their legislative right to dispute debts and request validation, unless and until the debt collector decides to contact them directly regarding the debt.

   **2.** Defendant asserts that Plaintiff does not allege that he timely disputed any debt; thus, he has not adequately alleged a violation of section 1692g(b). *Def's Mot. to Dism. FAC 18:19-20.*

Plaintiff's dispute of the debt is timely because it was initiated immediately upon discovery of the debt account reported by Defendant to his credit reports. FAC ¶14, 17. Since Defendant failed to provide notice of the debt and Plaintiff only came to learn of the debt

through the reporting, it is impossible to measure where Defendant draws the line for Plaintiff to make a timely dispute.

**3.** Defendant asserts that Plaintiff "has not described any efforts that [Defendant] took to try to collect a debt from him, let alone any false, deceptive, misleading, unfair, or unconscionable efforts." *Def's Mot. to Dism. FAC 18:28, 19:1-2.*

Defendant generically asserts that Plaintiff has failed to allege facts to support his claims that Defendant violated the FDCPA by using false, misleading, and deceptive or false representation or means to collect debts.

Defendant's argument, however, does not communicate as to what further facts Defendant would prefer to see in support of this claim. Plaintiff, in his FAC, states that Defendant used false, deceptive, and misleading representation or means, specifically by way of falsely representing the character, amount, or legal status of a purported debt to Plaintiff through CRAs in violation of 15 U.S.C. § 1692e(2). FAC ¶¶ 47, 48.

As discussed above, credit reporting constitutes a form of communication. As such, by reporting a debt in Plaintiff's credit reports, which it could not validate, Defendant falsely represented to Plaintiff that Plaintiff is in debt with Defendant.

Defendant knew of the falsity of the character, amount, or legal status of the purported debt it reported to CRAs. Specifically, Defendant knew that it does not have a valid claim against Plaintiff and yet proceeded to report a debt in Plaintiff's credit reports. Plaintiff's dispute letters submitted to Defendant along with Defendant's failure to prove the validity of the disputed debt put Defendant on notice that credit information it reported is false. As such, Defendant used misleading and deceptive representation by attributing false information to Plaintiff through CRAs.

**4.** Defendant asserts that Plaintiff's FAC contains no allegations as to what alleged conduct of Defendant violated section 1692e(8). *Def's Mot. to Dism. FAC 19:16-18.*

Contrary to Defendant's allegations Plaintiff FAC does contain an allegation that Defendant continued to report the collection account without changing the status to "disputed" in violation of 1692e(8). FAC ¶51. Because Plaintiff alleged that Defendant failed to

communicate that a disputed debt is disputed, conduct which specifically falls within the coverage of subsection e(8), Plaintiff has sufficiently alleged a violation of that section. *Petrosyan v. CACH, LLC, et al.*, Case No. 12-cv-08683-GW.

### E. Plaintiff's Claim for Defamation-Libel is not Preempted Under FCRA

Defendant asserts that Plaintiff's "claim for defamation is preempted by the FCRA." *Def's Mot. to Dism. FAC 19:25-28.*

 "Although § 1681t(b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s-2, 1681h(e) suggests that defamation claims can proceed against creditors as long as the plaintiff alleges falsity and malice." *Gorman,* 584 F.3d at 1166. The more specific preemption provision of 15 U.S.C. § 1681h(e), trumps the more general preemption provision of §1681t(b)(1)(F). *Gordon v. Greenpoint Credit*, 266 F. Supp.2d 1007, 1013 (S.D. Iowa 2003).

Defendant correctly refers to Section 1681h(e) as the narrower of the two provisions that provides consumers the right to bring a defamation-type claims when malice or willful intent to injure are proven. *Def's Mot. to Dism. FAC 20:6-10.*

The appropriate standard for "malice" is enunciated in *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964) which requires publication be made "with knowledge that it was false or with reckless disregard of whether it was false or not."

"Under New York Times, to show 'reckless disregard' a plaintiff must put forth 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Defendant's credit reporting of a debt was made willfully, intentionally, and with reckless disregard as to the truth or falsity of the publication because it was used as a "collection tactic" and "a powerful tool designed, in part, to wrench compliance with payment terms…." *Rivera* 145 F.R.D. at 623. "[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay just like dunning letters and telephone calls." John F. LeFevre*, Federal Trade Commission*, Letter (December 23, 1997), http://www.ftc.gov/os/statutes/fdcpa/letters/cass.htm.

As stated in Plaintiff's Complaint, Plaintiff submitted multiple letters to Defendant disputing the existence, ownership, and accuracy of the account. Defendant's failure to prove the accuracy of its reporting, after such excessive notices, permit the inference that Defendant could not produce evidence to prove the accuracy of its reporting. As such, Defendant entertained serious doubts as to the truth of its publication.

The fact remains that Defendant proceeded to report a debt to Plaintiff's credit file without informing Plaintiff with intent to deprive Plaintiff of an opportunity to avoid inaccurate information being published in his credit file.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's SAC. In the event Defendant's Motion is granted, Plaintiff requests leave to amend.

DATED: February 18, 2013                      **KAASS LAW**

                                           By: */s/ Armen Kiramijyan*
                                                 Armen Kiramijyan
                                                 Attorney for Plaintiff