O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAAGN VARTANIAN,<br><br>  Plaintiff,<br>  v.<br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>  Defendant. | Case No. 2:12-cv-08358-ODW(AJWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIOIN TO DISMISS [21]** |

## I. INTRODUCTION

Plaintiff Vaagn Vartanian filed a Complaint against Defendant Portfolio Recovery Associates, LLC, alleging that Portfolio reported credit information regarding Vartanian it knew or should have known to be inaccurate. Portfolio twice moved to dismiss the Complaint, and Vartanian twice filed untimely oppositions. After considering the merits of Portfolio's arguments, the Court **GRANTS IN PART AND DENIES IN PART** this Motion to Dismiss.[1]

## II. FACTUAL BACKGROUND

On August 16, 2010, Vartanian reviewed his credit report. (FAC ¶ 10.) To his surprise, he noticed a Wells Fargo account listed on the report he claims he never

///

---

[1] Having carefully considered the papers filed in support of this Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

opened. (*Id.* ¶¶ 10–11.) That same day, Vartanian sent Wells Fargo a letter disputing ownership of the account. (*Id.* ¶ 11.)

On October 12, 2010, Wells Fargo sent Vartanian a letter informing him that it deleted the account from Vartanian's credit reports maintained by Equifax, TransUnion, Experian, and Innovis—the major credit-reporting agencies ("CRAs"). (*Id.* ¶ 12.) On September 21, 2010, Vartanian confirmed that the account had in fact been deleted.[2] (*Id.* ¶ 13.)

Around March 2012, Vartanian obtained another credit report from Experian, TransUnion, and Equifax. (*Id.* ¶ 14.) Vartanian spotted an account in derogatory status matching the description of the one previously removed by Wells Fargo. (*Id.* ¶¶ 14–15.) This time Portfolio had reported the account. (*Id.* ¶ 14.)

Vartanian disputed the account in writing to the CRAs, claiming that the account did not belong to him and was thus inaccurately reported. (*Id.* ¶ 17.) He believes that the CRAs communicated with Portfolio about the account. (*Id.* ¶ 18.)

On April 13, 2012, Vartanian mailed a dispute letter directly to Portfolio, requesting verification of the alleged debt and requesting that the account be deleted from his credit reports. (*Id.* ¶ 19.)

On May 14, 2012, and June 11, 2012, Vartanian sent Portfolio two more dispute letters. (*Id.* ¶¶ 22–23.)

As of August 1, 2012, Portfolio had not responded to Vartanian's letter and continued to report the derogatory account on Vartanian's credit reports. (*Id.* ¶¶ 24–25.)

In response, Vartanian filed a Complaint against Portfolio on October 2, 2012, alleging seven claims for willful and negligent violations of the Fair Credit Report Act, 15 U.S.C. § 1681s-2(b); intentional and negligent violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.25(a); violations of

---

[2] Paragraph 13 of Vartanian's FAC initially lists this date as "September 21, 2011," but then proceeds to list it as "September 21, 2010" later in the paragraph. (FAC ¶ 13.) The Court presumes Vartanian erred in listing the date as "2011."

the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692f, 1692g;[3] violation of the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17; and defamation by libel. (ECF No. 3.)

On November 30, 2012, Portfolio moved to dismiss the Complaint. (ECF No. 13.) On December 20, 2012, Vartanian filed an untimely opposition. (ECF No. 16.) The Court accordingly struck the opposition and granted the motion. (ECF Nos. 17, 18.)

On January 16, 2013, Vartanian filed his First Amended Complaint, which mirrors the claims in his original Complaint. (ECF No. 19.) On February 7, 2013, Portfolio filed this Motion to Dismiss. (ECF No. 21.) On February 19, 2013, Vartanian once again filed an untimely opposition. (ECF No. 24.) The Court accordingly struck it. (ECF No. 25.)

Portfolio's Motion to Dismiss is now before the Court for decision.

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2).

For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which

---

[3] Vartanian twice cites to "§§ 1692(e), 1692(f) and 1692(g)" as bases for his FDCPA causes of action against Portfolio. The Court once again gives Vartanian the benefit of the doubt and presumes that he did not intend to sue Portfolio based on a Congressional finding and two nonexistent subsections.

the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability; labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

4

## IV. DISCUSSION

Portfolio moves to dismiss Vartanian's FAC on the grounds that (1) Vartanian pleaded insufficient facts to establish his credit-reporting claims, and (2) that Vartanian's other claims fail as a matter of law. Since the Court struck Vartanian's untimely Opposition, it has the discretion to deem the Motion unopposed. C.D. Cal. L.R. 7-12. But in the interest of justice, the Court analyzes each of Portfolio's arguments.

### A. Fair Credit Reporting Act Claims

Portfolio argues that Vartanian's Fair Credit Reporting Act ("FCRA") claims fail for two reasons: (1) Vartanian failed to allege that the CRAs ever determined his dispute to be nonfrivolous; and (2) Portfolio's duty to investigate was never triggered because Vartanian does not establish that the CRAs contacted Portfolio regarding Vartanian's dispute. The Court disagrees.

FCRA prohibits, among other things, "furnishers of information" from providing information to a CRA they know or have to reason to believe is inaccurate about a consumer. 15 U.S.C. § 1681s-2(a)(1)(A). If a furnisher receives notice of a consumer dispute from a CRA, FCRA obligates the furnisher to conduct a reasonable investigation of the disputed information. § 1681s-2(b)(1)(A); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) (interpreting the word "investigation" to mean a "reasonable" investigation).

FCRA empowers an individual to bring a private action against any "person" either who willfully fails to comply with the Act's requirements, § 1681n, or negligently fails to do so, § 1681o. But FCRA expressly limits the scope of a private action against a furnisher only to those damages arising out of that furnisher's failure to comply with the investigation requirements triggered only by a CRA's notice to the furnisher of a dispute. § 1681s-2(c). That is, a consumer cannot bring suit against a furnisher for failure to conduct a reasonable investigation when the consumer disputes the information directly with the furnisher. *Id.*

Portfolio argues first that Vartanian's FCRA claims falter because he failed to allege that the CRAs determined that his dispute of the account was nonfrivolous, and, even assuming his disputes were not frivolous, that any investigation by Portfolio was unreasonable. Second, Portfolio contends that it had no duty to respond to Vartanian's direct inquiries because Portfolio's duty to conduct a reasonable investigation would only be triggered if one of the *CRAs* contacted Defendant. And according to Portfolio, Vartanian did not allege any contact between any CRA and Portfolio.

> *1.     The CRAs did not have to determine that Vartanian's dispute was nonfrivolous as a precondition to Vartanian's suit against Portfolio*

Contrary to Portfolio's contention, Vartanian was not required to allege that the CRAs determined his dispute to be nonfrivolous. While a CRA may terminate an investigation if it determines that a dispute is frivolous, § 1681s-2(a)(8)(F), a CRA is not required to make a preliminary finding of nonfrivolousness.

The frivolous-dispute exception of 15 U.S.C. § 1681s-2(a)(8)(F) almost identically mirrors the exception in 15 U.S.C. § 1681i(a)(3), the section that establishes a CRA's reinvestigation duties. The latter section uses permissive, not mandatory, language to allow CRAs to terminate a reinvestigiation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant." Nowhere does FCRA require a CRA to inquire into the validity of a dispute prior to reinvestigating the claim. *See* § 1681i(a)(3).

To the extent that Portfolio relies upon *Roybal v. Equifax*, 405 F. Supp. 2d 1177 (E.D. Cal. 2005), the Court declines to follow the district court's reading of FCRA in that case. In *Roybal*, the court cited to § 1681i(a)(3) in support of its holding that a CRA has an "obligation to investigate whether the claim is frivolous or irrelevant." *Id.* at 1180. But as discussed above, this Court finds that CRAs have no obligation under § 1681i(a)(3) to preliminarily assess a consumer dispute's viability.

/ / /

*2. Vartanian sufficiently pleaded the CRAs' contact with Portfolio*

Portfolio correctly states that Vartanian must prove that the CRAs contacted Portfolio to have an actionable claim against Portfolio under § 1681s-2(b). It is not enough for the purpose of Vartanian's § 1681s-2(b) claims that he allegedly contacted Portfolio directly three times. While furnishers do have a duty to conduct a reasonable investigation of disputed information upon direct notice from a consumer under FCRA's implementing regulations, 16 C.F.R. § 660.4(e), consumers like Vartanian cannot sue for alleged violations of the regulations promulgated under 15 U.S.C. § 1681s-2(a)(8). § 1681s-2(c)(1).

But Vartanian did allege "on information and belief" that the CRAs contacted Portfolio about Vartanian's dispute of the account in derogatory status. (FAC ¶ 18.) The Court is mindful that Vartanian has yet to benefit from the Federal Rules' liberal discovery procedures. He cannot know for sure the extent of communications, if any, between the CRAs and Portfolio. Since the Court must accept the allegations in the Complaint as true at this stage, the Court finds that Vartanian did adequately pleaded § 1681s-2(b) claims against Portfolio.

The Court therefore **DENIES** Portfolio's Motion to Dismiss with respect to Vartanian's first and second claims.

**B. California Consumer Credit Reporting Agencies Act Claims**

The California Consumer Credit Reporting Agencies Act ("CCRA") prohibits any "person" from furnishing "information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). Congress expressly saved this particular subsection from FCRA preemption. 15 U.S.C. § 1681t(b)(1)(F)(ii).

Section 1785.31(a) authorizes private causes of action for either willful or negligent violations of, among others, section 1785.25(a). While Congress did not specifically except section 1785.31(a) from FCRA preemption, the Ninth Circuit has

1 found that the enforcement section was nonetheless spared. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1171 (9th Cir. 2009).

Portfolio cites the California Court of Appeal's opinion in *Pulver v. Avco Financial Services*, 182 Cal. App. 3d 622 (1986), for the proposition that consumers like Vartanian have no standing to sue furnishers of information under that section. The court in *Pulver* concluded that the California Legislature used the phrase "any person" in section 1785.25(a) "not to impose liability on a supplier of information to a credit reporting agency, but merely to make it clear that an action could be brought against a credit reporting agency regardless of the form under which it transacts business." 182 Cal. App. 3d at 634.

While the court's decision in *Pulver* has not been overruled, several later decisions have allowed private actions to proceed against furnishers under that section. *See, e.g.*, *Sanai v. Saltz*, 170 Cal. App. 4th 746, 770 (2009); *Hussey-Head v. World Sav. & Loan Ass'n*, 111 Cal. App. 4th 773, 779–80 (2003). Giving Vartanian the benefit of this murky state of the law, the Court finds that he can bring a claim against Portfolio under section 1785.25(a).

Section 1785.25(a) lacks § 1681s-2(b)'s CRA-dispute-notification trigger. Unlike with the FCRA claims, here it does matter that Vartanian allegedly sent three dispute letters directly to Portfolio. These letters put Portfolio on notice that the disputed account was potentially "incomplete or inaccurate" information within the meaning of section 1785.25(a). That Vartanian believes that the CRAs also contacted Portfolio about Vartanian's dispute further ungirds this conclusion.

The Court therefore **DENIES** Portfolio's Motion with respect to Vartanian's third and fourth claims.

/ / /
/ / /
/ / /
/ / /

### C. Fair Debt Collection Practices Act and Rosenthal Debt Collection Practices Act Claims

Vartanian alleges a litany of statutory violations in his fifth and sixth causes of action against Portfolio, all of which are ultimately based on the federal Fair Debt Collection Practices Act ("FDCPA").

Within five days after the initial communication with a consumer regarding a debt, a debt collector must send the consumer a notice describing the debt, to whom it is owed, and a statement that the consumer has a right to dispute the debt. 15 U.S.C. § 1692g(a). If a consumer disputes the validity of the debt within 30 days of receiving the notice, the debt collector must cease collection practices and validate the debt. § 1692g(b).

FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e; *see also* § 1692e(2), (8). Nor may the debt collector use "unfair or unconscionable means" to collect a debt. § 1692f. Section 1788.17 of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA") simply reiterates that debt collectors are subject to the FDCPA.

Portfolio contends that Vartanian has not alleged that the account in question is a "debt" within the meaning of either the federal or state acts. Portfolio also argues that all of Vartanian's allegations fail because he never alleged that Portfolio ever contacted him about any "debt," and therefore there were no debt-collection practices to potentially violate either act.

Portfolio's point regarding Vartanian's failure to allege that his account is a "debt" within the meaning of FDCPA is well taken. The Ninth Circuit has noted that "a threshold issue in a suit brought under the [FDCPA] is whether or not the dispute involves a 'debt' within the meaning of the statute." *Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004). The Act defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the

money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see also* Cal. Civ. Code § 1788.2(e), (f) (similarly defining "debt" for purposes of the RFDCPA). The definition focuses on "consensual transactions" for consumer goods or services. *Turner*, 362 F.3d at 1227.

Nowhere in the Complaint does Vartanian allege that disputed account arose out of either an actual or alleged "consensual transaction" for consumer goods or services. He pleads only that the account was initially reported by Wells Fargo and then by Portfolio. But the account's classification remains a mystery.

Even assuming the account is a "debt" for purposes of the FDCPA, Vartanian does not contend that Portfolio ever contacted him. Indeed, it is Portfolio's lack of communication that irked Vartanian. There was then no "initial communication" from Portfolio sufficient to trigger the 15 U.S.C. § 1692g(a)'s notice requirement. Neither were there any debt-collection practices to stop under § 1692g(b). And by that argument, there were no false, deceptive, or unconscionable debt-collection practices by Portfolio within the meaning of §§ 1692e(2), 1692e(8), and 1692f.

Since section 1788.17 of the RFDCPA merely recapitulates a debt collector's obligations under FDCPA, Vartanian's state-law claim fails for the same reasons.

The Court therefore **GRANTS** Portfolio's Motion with respect to the fifth and sixth causes of action.

**D. Defamation by Libel**

Vartanian's bases his defamation-by-libel claim on Portfolio reporting the allegedly false account information on Vartanian's credit reports.

Libel is one way a person can commit defamation in California. Cal. Civ. Code § 44(a). California law defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which

/ / /

1  causes him to be shunned or avoided, or which has a tendency to injure him in his
2  occupation." *Id.* § 45.

3  Portfolio argues that 15 U.S.C. § 1681t(b)(1)(F) preempts Vartanian's
4  defamation-by-libel claim.

5  When Congress amended FCRA in 1996, it expressly preempted any state laws
6  that imposed any "requirement or prohibition" on, among others, any subject matter
7  regulated under § 1681s-2. § 1681t(b)(1)(F). But Congress did not repeal preexisting
8  § 1681h(e), which limits defamation claims brought under §§ 1681n or 1681o to those
9  where the allegedly false information was "furnished with malice or willful intent to
10 injure" the consumer. The two sections provide no clear answer on whether
11 defamation claims against furnishers are still actionable.

12 The Ninth Circuit hypothecated that although "§ 1681t(b)(1)(F) appears to
13 preempt all state-law claims based on a creditor's responsibilities under § 1681s–2,
14 § 1681h(e) suggests that defamation claims can proceed against creditors as long as
15 the plaintiff alleges falsity and malice." *Gorman v. Wolpoff & Abramson, LLP*, 584
16 F.3d 1147, 1166 (9th Cir. 2009). But the court left resolution of the issue for another
17 day. *Id.* at 1167.

18 The United States Supreme Court has interpreted the phrase "no requirement or
19 prohibition" several times with respect to preemption provisions in other federal
20 statutes. Interpreting the term in the Public Health Cigarette Smoking Act of 1969,
21 the Supreme Court reasoned that the "phrase '[n]o requirement or prohibition' sweeps
22 broadly and suggests no distinction between positive enactments and common law; to
23 the contrary, those words easily encompass obligations that take the form of common-
24 law rules." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992) (plurality
25 opinion). The Court subsequently confirmed this reasoning at least twice. *Riegel v.*
26 *Medtronic, Inc.,* 552 U.S. 312, 324 (2008); *Medtronic, Inc. v. Lohr*,
27 518 U.S. 470, 510–11 (1996).
28 / / /

Given the Supreme Court's repeated conclusion that "no requirement or prohibition" precludes common-law claims in the regulated fields, the Court finds that Vartanian's defamation-by-libel claim is preempted by FCRA, § 1681t(b)(1)(F). It is unclear why Congress spared § 1681h(e) when it took its pruning shears to state-credit-reporting law in 1996. But Congress trimmed dexterously, specifically exempting state laws such as California Civil Code section 1785.25(a) from preemption. § 1681t(b)(1)(F)(ii). To think that Congress clumsily left behind a Trojan horse that a litigant could employ to penetrate § 1681t and destroy FCRA's delicately crafted preemption scheme is irrational.

The Court accordingly **GRANTS** Portfolio's Motion to Dismiss with respect to Vartanian's defamation-by-libel claim.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss with respect to Vartanian's fifth, sixth, and seventh claims but **DENIES** the Motion with respect to Plaintiff's first, second, third, and fourth claims.

If Vartanian believes he can remedy his pleading shortfalls consistent with Rule 11, he may amend his Complaint no later than **March 13, 2013**. The Court accordingly **GRANTS** Vartanian leave to amend his Complaint only as to his fifth and sixth claims. Vartanian may not amend his first, second, third, or fourth claims absent leave of Court. Since Vartanian's seventh claim fails as a matter of law, amendment would be futile. Vartanian's seventh claim is therefore **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

March 7, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**